9/19/2016 8:42:44 AM
Pat Tarin
DistrictClerk
Reeves County, Texas
Misty Thomas

Case No. 4:16-cv-00084

CAUSE NO: ___16-09-21678-CVR___

| | | |
|---|---|---|
| NORA O. LITTLEJOHN, an individual, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | REEVES COUNTY, TEXAS |
| | § | |
| THE GEO GROUP, INC. and | § | |
| REEVES COUNTY DETENTION | § | |
| CENTER I & II | | |
| **Defendants.** | § 143 RD JUDICIAL DISTRICT | |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, NORA O. LITTLEJOHN, an individual (hereinafter referred to as "Plaintiff" or "LITTLEJOHN") through undersigned counsel and files her Original Petition against THE GEO GROUP, INC., ("GEO") and REEVES COUNTY DETENTION CENTER I & II ("RCDC") (hereinafter collectively referred to as "Defendants'"), and in support, would show as follows:

### I.   DISCOVERY LEVEL

1.     Plaintiff intends to conduct discovery under Level 3 of Texas Rules of Civil Procedure, Rule 190.4.

### II.   PARTIES

2.     Plaintiff, LITTLEJOHN is a citizen of the United States America.  She is a Hispanic white female born on May 27, 1954.  Plaintiff's national origin is Spain/Mexico and her mailing address is 808 South Allen Street, Monahans, TX 79756.

3.     Defendant, GEO operates, manage or otherwise control the administration of RCDC.  Defendant, GEO may be served with citation by delivering a copy of the same to its

registered agent Corporate Creations Network, Inc., at 2425 W. Loop S, #200, Houston, Texas 77027.

4.      Defendant, RCDC, is a detention facility to house prisoners for the Federal Bureau of Prisons, specifically, criminal aliens.  RCDC is owned or managed by GEO.  RCDC is having more than 201 employees.  Defendant, RCDC, may be served with citation by delivering a copy of the same to its registered agent, County Attorney, Alva Alvarez, at 120 W. 5th Street Pecos, TX 79772.

### III.    JURISDICTION AND VENUE

5.      This Court possesses jurisdiction of the causes of action asserted herein, in that Plaintiff's damages, exclusive of interest and costs, exceed the minimum jurisdictional limits of this Court.

6.      Defendant, GEO is/was engaged in business or commerce in Reeves County, Texas.  Thus, GEO had sufficient minimum contacts with Texas to establish both specific and general jurisdiction in Texas.

7.      Venue in Reeves County is proper in this cause because all or part of the events giving rise to this lawsuit occurred in Reeves County, Texas.

### IV.    STATEMENT OF FACTS

8.      GEO operates under a contractual arrangement with the Bureau of Prisons of the United States of America.  November 2003, GEO was selected to provide management services at RCDC.

9.      On January 13, 2005, Plaintiff was hired as a Correctional Officer at RCDC by Defendants.  At the time of Plaintiff's termination, Unit Manager, Ms. Maria Lopez ("Ms. Lopez") was her immediate supervisor.  Before Ms. Lopez, Ms. Diana Molina ("Ms. Molina")

was Plaintiff's immediate supervisor.

10.     Plaintiff was under the supervision of unit manager, Ms. Molina for approximately four months in 2015. At that time, Plaintiff did not have access to "geo" system to obtain the information pertaining to inmates' financial account and status of their financial responsibility and Plaintiff relied heavily on her co-worker, Julia Carrasco for a lot of printouts. Ms. Molina was aware of this fact.

11.     Plaintiff had a case load of 280 inmates and the programs that Plaintiff conducted weekly were greater than the number of programs conducted by the other case managers in the entire facility.

12.     In the month of September of 2015, the inmates in cell C7 were destroying government property and putting up laundry strings and hanging clothes to cover up the view from staff. Plaintiff reported this to authorities at RCDC. At this Ms. Molina falsely accused Plaintiff of wasting her time and doing security's job duties. Ms. Molina falsely accused Plaintiff of not finishing the October and November releases. Plaintiff completed all paper work in time and submitted it to records department.

13.     Ms. Molina provided the PDP-001 Disciplinary Incident Report to Plaintiff nearly at 4:00 p.m. Plaintiff advised Ms. Molina that she would return back to facility and return back the PDP-001 Disciplinary Incident Report. Ms. Molina stated "never mind" she would print another form from the computer. Next day after conducting open house Plaintiff found that Ms. Molina already left the facility so Plaintiff left PDP-001 Disciplinary Incident Report with Ms. Nichols from human resources. Ms. Molina falsely accused Plaintiff of not returning the PDP-001 Disciplinary Incident Report to her.

14.     Plaintiff provided advance notice of scheduled program reviews to inmates by

posting the call out list for inmates' program review on Fridays when the programs were scheduled for Monday.

15.     Plaintiff used to write-up the inmates failing to appear at their scheduled program review. Ms. Molina ordered Plaintiff to stop writing up the inmates. Ms. Molina insisted that Plaintiff personally go and look for the inmates who failed to appear for scheduled program review. Plaintiff advised Ms. Molina that it would be a waste of time as inmates go to recreation yard, hobby crafts, medical appointments and some of them go to visit their friends in the other unit. Ms. Molina became adamant towards Plaintiff and said that Plaintiff need to hunt down these inmates as "Warden Henderson" did not want to write down refusals on the program reviews and Plaintiff was ordered not to write the inmates up. This against the Code of Federal Regulation on Classification of Inmates. A copy of Code of Federal Regulation on Classification of Inmates is attached hereto as **Exhibit "A"** and incorporated herein by reference.

16.     Plaintiff had no choice but to left signature space blank until she found the inmates who failed to appear at their program reviews.

17.     Plaintiff opposed and did not agree on lot of things with Ms. Molina because the acts of Ms. Molina were against the RCDC's procedure and policies. Warden Henderson moved Plaintiff out from Unit C.

18.     On October 12, 2015, Plaintiff was relocated to Unit-G and Unit Manager Maria Lopez was her immediate supervisor. Ms. Lopez was not only adamant about not writing up the inmates but she was also hostile and aggressive towards Plaintiff. From October 12, 2015, to October 15, 2015, Plaintiff was harassed by Ms. Lopez when Plaintiff was overload with inmates' case load and Ms. Lopez deliberately created more pressure and stress to Plaintiff.

19.     Ms. Lopez instructed Plaintiff to follow the schedule that Ms. Lopez posted for

Plaintiff at her office door.  Ms. Lopez instructed Plaintiff to catch up with the late custodies and to do the corrections on release paperwork on inmate Acosta-Ruiz, Alfonso.  The paperwork on inmate Acosta-Ruiz, Alfonso was originally supposed to be completed and turned into records by case manager Alex Garcia.  Acosta-Ruiz, Alfonso was disputing the release date and refused to sign the corrected copy.  Ms. Lopez despite the knowledge of this fact became upset with Plaintiff for not completing release paper work.

20.     Plaintiff was never late with her releases, programs, or custodies paperwork.  The paperwork for custodies and release were already late in the caseload when Plaintiff joined Unit G on October 12, 2015.  A copy of email dated November 5, 2015, is attached as **Exhibit "B"** and incorporated herein by reference.

21.     Plaintiff believes that Ms. Molina and Ms. Lopez instructed Alex Garcia to cancel his programs so that Plaintiff would have to conduct them upon her arrival to Unit G.  Plaintiff believes that Ms. Lopez has a history of displaying hostility towards female employees and shows favoritism towards male case managers like Joey Ayala.

22.     Plaintiff believes that in order to harass her Ms. Lopez instructed Mr. Garcia to cancel his program reviews and asked Plaintiff to do his program reviews.

23.     Ms. Lopez instructed that Joseph Ayala would sit in Plaintiff's program review and Plaintiff would sit in his program reviews.  Joseph Ayala refused to sit in on Plaintiff's program reviews.  Joey Ayala was allowed by Ms. Lopez to conduct his daily work duties with total disregard of policy and procedure.  When Plaintiff confronted him about this he said that Ms. Lopez was aware of it and said, "She is OK with It".

24.     On October 15, 2015, Plaintiff received a phone call that her father was dying.  Ms. Lopez did not allow Plaintiff to leave and forced Plaintiff to stay and complete her work.

Plaintiff's daughter and Lieutenant Billy Garcia helped Plaintiff out from Unit G.

25.     Before leaving Plaintiff packed her files into the black cart and left the cart in the office with her desk clean and clear of all paper work.

26.     Plaintiff confronted Ms. Lopez for staying in the conference room while inmate was speaking with his attorney.  Ms. Lopez said she knew it was a violation of inmate's rights.

27.     On November 2, 2015, Ms. Lopez write-up Plaintiff for leaving without completing her files on October 15, 2015.  On November 10, 2015, Plaintiff was given a two day suspension without pay based on false allegations fabricated by Ms. Lopez.  Moreover, at the disciplinary hearing, Assistant Warden of Security Robert Ellis did not allow Plaintiff to speak or defend herself and denied Plaintiff opportunity of being heard before suspending her.

28.     During the month of October 2016, when the unit managers were conducting audits of all central files in Unit-C, Ms. Lopez called Plaintiff on several occasions to come down to Unit-C and was told to sign her name on several of the programs that were incomplete due to the inmates failing to show up.  All Unit Managers were going through files calling in inmates and staff members for their signatures.

29.     Ms. Molina issued false disciplinary write up to Plaintiff for incomplete program files when program files were entered in sentry as complete.  Ms. Molina conspired with Ms. Lopez to set Plaintiff with overload of extra work which led to the write-ups.  Not only this, William Henderson, the Assistant Warden of Programs and Supervisor of Ms. Lopez, not only encouraged Ms. Lopez to proceed with her false allegations towards Plaintiff but also refuse to listen to Plaintiff's complaints regarding Ms. Lopez's hostile behavior and her constant manipulative fabrications of incidents that completely gave upper management the impression that Plaintiff was insubordinate.

30.     Ms. Lopez and Ms. Molina created the worse situations for Plaintiff.  Plaintiff suffered harassment and hostile work environment.  Plaintiff received the write ups for no fault on her part.  Ms. Lopez gave false statements regarding Plaintiff's work performance.  Ms. Lopez and Ms. Molina made Mr. Henderson to believe that Plaintiff instigates problems within the unit and that Plaintiff does not listen well.  Plaintiff was moved out of Ms. Molina's unit team because Plaintiff found several errors in the inmates' central files.  Plaintiff was running a case load of approximately 280 inmates and never late with her work load.  On the other hand, Ms. Molina was constantly loosing inmates' central files due to her allowing the unit clerk to not count the files daily as per policy.  Both Ms. Molina and the file clerk falsify the central file accountability book and Ms. Molina seemed to resent the fact that Plaintiff constantly reminded her that files were missing.

31.     On November 16, 2015, Plaintiff was instructed not to proceed with her program reviews which were on Plaintiff's docket for the week.

32.     On November 30, 2015, Plaintiff filed her grievance with the Human Resource Department against Ms. Molina, Ms. Lopez, and Mr. Robert Ellis for harassment and Violation of Plaintiff's Civil Rights.  A copy of Grievance Report filed with Human Resource is attached as **Exhibit "C"** and incorporated herein by reference.

33.     On February 10, 2016, Ms. Lopez gave poor job performance evaluation to Plaintiff.  Plaintiff never received such a poor evaluation in her eleven (11) years job period at RCDC.  Plaintiff refused to sign the evaluation as the evaluation were all based on Ms. Lopez's personal opinion about Plaintiff and not on true facts.  In the evaluation report, Ms. Lopez marked down that Plaintiff needed improvement but did not explain the reasons.  A copy of evaluation report is attached as **Exhibit "D"** and incorporated herein by reference.

34.     On February 17, 2016, Plaintiff was called to Warden Bobby Thompson's office. Plaintiff was told that the lawyers (not the investigators), had concluded that the investigation was all "OPERATIONAL". Plaintiff was told to let "bygones be bygones" and to move on. RCDC, did not give Plaintiff the copy of the investigation report.

35.     On March 22, 2016, Plaintiff found that an inmate who had financial contract in his file, drawn up by the previous case manager Alex Garcia nine months ago, still owed a total balance of $100.00. The financial statement indicated that no monthly payments were being taken out of his account. Plaintiff brought this information to Ms. Lopez's attention.

36.     On March 24, 2016, Plaintiff was falsely accused of forging the signature of an inmate named Rene Solis on her program review of September 2015. Inmate Rene Solis denied that he had attended Plaintiff's program review in September 2015. Plaintiff believes that either inmate was lying or the inmate's signature was forged by another staff member at the time of audit.

37.     In March 2016, Plaintiff provided a written statement to CMC David Florez ("Mr. Florez") denying any knowledge of forged signature of Rene Solis. The inmates did not have to sign anything and they can refuse to sign any paperwork. Policy allowed case managers to write refusal and to proceed with the program review even without inmates' signature.

38.     On March 7, 2016, Plaintiff filed intake questionnaire with Equal Employment Opportunity Commission (EEOC). A copy of EEOC Intake Questionnaire is attached as **Exhibit "E"** and incorporated herein by reference.

39.     On April 7, 2016, Plaintiff received a letter from EEOC stating that in order to initiate the investigation EEOC require Plaintiff's Charge of Discrimination. A copy of letter from EEOC is attached as **Exhibit "F"** and incorporated herein by reference.

40.     On April 12, 2016, Plaintiff filed her first Charges of Discrimination with EEOC for retaliation and discrimination on the basis of sex and age.   A copy of EEOC charge is attached hereto as **Exhibit "G"** and incorporated herein by reference.

41.     On March 11, 2016, Head Warden Thompson threatened Plaintiff with another write up for not following instructions and for not doing work duties.   Warden Thompson told Plaintiff to go to Mr. Henderson to address her problems and concluded the meeting with saying, "After this you can go on and file your grievance or whatever else you plan on doing!"   Warden Thompson did not allow Plaintiff to go home even knowing that Plaintiff was not feeling well and her blood pressure was high up to 163/109.   Mr. Henderson was part of the problem as he supports Ms. Lopez.

42.     Defendants denied Plaintiff the opportunity to work overtime and allowed other case managers to work overtime on weekend.

43.     In April of 2016, a person came for Plaintiff's statement but did not identify himself or provided his card.

44.     On April 28, 2016, Plaintiff was suspended for indefinite period.   A copy of Administrative Suspension is attached as **Exhibit "H"** and incorporated herein by reference.

45.     On May 31, 2016, Plaintiff filed another intake questionnaire with EEOC for retaliation.   A copy of EEOC Intake Questionnaire is attached as **Exhibit "I"** and incorporated herein by reference.

46.     On June 24, 2016, EEOC dismissed Plaintiff's first complaint and issued the Notice of Rights to sue within 90 days of the receipt of the notice.   A copy of dismissal letter and Dismissal and Notice of Rights is attached hereto as **Exhibit "J"** and incorporated herein by reference.

47.     On July 5, 2016, Plaintiff filed second Charge of Discrimination against Defendant, RCDC, for retaliation and age discrimination that occurred on April 28, 2016.  A copy of second EEOC charge is attached hereto as **Exhibit "K"** and incorporated herein by reference.  Plaintiff was suspended indefinitely in retaliation of Plaintiff's filing of EEOC complaint against RCDC on April 12, 2016.

48.     On July 15, 2016, RCDC terminated Plaintiff from her employment.  A copy of Termination Letter is attached hereto as **Exhibit "L"** and incorporated herein by reference.  Plaintiff was retaliated for filing EEOC complaint on July 5, 2016.

49.     On July 26, 2016, Plaintiff filed amended charge of discrimination with the EEOC.  A copy of Amended Charge of Discrimination is attached hereto as **Exhibit "M"** and incorporated herein by reference.

50.     Plaintiff believes that she was retaliated and discriminated based on sex, age, for filing grievance with Human Resource, and filing EEOC complaints.

51.     All conditions precedent for filing of this lawsuit has occurred or waived.  This lawsuit is filed within ninety (90) days of Plaintiff's receipt of right to sue letter.

## V.     CAUSES OF ACTION

### COUNT ONE
### [RETALIATION – UNDER TITLE VII (42 U.S.C. § 2000 et seq.)]

52.     Plaintiff incorporates all factual allegations contained in paragraphs 1 through 51 of this Petition as though fully set forth at length herein.

53.     As described above, Defendants retaliated against Plaintiff for opposing ongoing harassment and hostile work environment; filing the grievance with Human Resource; and for filing complaints of retaliation and discrimination with EEOC.  As a direct and proximate result of these actions, Plaintiff suffered retaliation and termination.

54.     Plaintiff engaged in a protected activity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.

55.     Defendants also engaged in an unlawful employment practice by discharging Plaintiff because she engaged in activity protected by Title VII of 42 U.S.C. §2000 et seq., including but not limited to opposing discriminatory employment practices.

56.     Furthermore, Defendants engaged in an unlawful employment practice by allowing Plaintiff's engagement in activity protected under Title VII of 42 U.S.C. §2000 et seq. as a motivating factor for Defendants' disparate treatment and/or termination of Plaintiff.

57.     By doing the above acts complained of, Defendants had damaged Plaintiff in her ability to earn a living, caused Plaintiff great mental, emotional and psychological pain.

58.     By reason of the Defendants' actions, Plaintiff, found it necessary to retain the services of an attorney in these proceedings and entitled to reasonable attorney's fees pursuant to Title VII and under the general equity Powers of the Court.

### COUNT TWO
### [HARASSMENT AND HOSTILE WORK ENVIRONMENT]

59.     Plaintiff incorporates all factual allegations contained in paragraphs 1 through 51 of this Petition as though fully set forth at length herein.

60.     Plaintiff was subjected to harassment and a hostile working environment based on her gender/sex (Female).

61.     This harassment and hostile working environment was severe, based on the nature of the harassment, including Defendants' write ups, false allegations, threatening of being fired, favoritism to male employees, retaliation, all of which were designed to and were likely to humiliate Plaintiff and which did have that effect on Plaintiff.

62.    The effect of the harassment and hostile working environment complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex in violation of Title VII.

63.    Defendants were on notice of said practices and hostile working environment because Defendants' managers, including Defendants' direct supervisors, participated in and witnessed said practices.

64.    Defendants were on notice of said practices and hostile working environment because Plaintiff complained in writing to Human Resource Managers as well as orally to Defendants' representatives, agents, regarding said practices.

65.    Defendants failed and refused to investigate and take prompt and effective action regarding said practices.

66.    Defendants failed and refused to investigate and take prompt and effective action to stop the hostile working environment.

67.    Plaintiff was threatened with write ups and subjected to tangible employment actions and materially adverse employment actions by Defendants by being subjected to termination.

68.    By creating, condoning and perpetuating a hostile work environment because of Plaintiff's gender, Defendants acted intentionally, maliciously, and/or recklessly.

69.    By doing the above acts complained of, Defendants had damaged Plaintiff in her ability to earn a living, caused Plaintiff great mental, emotional and psychological pain.

70.    By reason of the Defendants' actions, Plaintiff, found it necessary to retain the services of an attorney in these proceedings and entitled to reasonable attorney's fees pursuant to Title VII and under the general equity Powers of the Court.

## VI.   ATTORNEY'S FEES

71.     Plaintiff is entitled to an award of attorney's fees and cost under Title VII, 42 USCS § 2000e et seq.

## VII.   DEMAND FOR JURY TRIAL

72.     Plaintiff demands a trial by jury on all issues in this matter.

## VIII.   RESERVATION OF RIGHTS

73.     Plaintiff reserves the right to bring additional causes of action against the Defendants and to amend the Petition as necessary.

## IX.   PRAYER

WHEREFORE, Plaintiff, NORA O. LITTLEJOHN, respectfully requests that the Defendants be cited to appear and answer, and that upon trial of this cause, have judgment against Defendants and order the following relief against Defendants:

    a.     A declaratory judgment, declaring Defendants' acts, through the acts of its agents and employer, herein complained of to be in violation of Title VII of the Civil Rights Act of 1964 and Retaliation.

    b.     Compensatory damages against Defendants for each violation of Plaintiff's rights, as protected by Title VII, for Retaliation, for pain, suffering, emotional distress, humiliation and for any resulting physical and emotional damages;

    c.     Lost earning and Special damages;

    d.     Liquidated damages pursuant to discrimination;

    e.     Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including Title VII; and

    f.     Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,


By: **/s/GERALD K. FUGIT**
    Gerald K. Fugit
    fugitassist@att.net
    **GERALD K. FUGIT, P.C.**
    412 N. Texas Avenue
    Odessa, Texas 79761
    Tel: (432) 332-1661
    Fax: (432) 335-0003
    State Bar No. 07501000
    **Attorney for Plaintiff**
    NORA O. LITTLEJOHN

/:33   FAX 432 447 9224   REEVES CO DETENTION CNTR                                      ☑012/014

P5322.13
5/16/2014
Attachment A, Page 1

Attachment A. Code of Federal Regulations on Classification of Inmates

§524.10  Purpose.

The purpose of this subpart is to explain the Bureau of Prisons (Bureau) process for classifying newly committed inmates and conducting program reviews for all inmates except:

(a) Pretrial inmates, covered in 28 CFR part 551; and

(b) Inmates committed for study and observation.

§524.11  Process for classification and program reviews.

(a) *When:*

(1) Newly committed inmates will be classified within 28 calendar days of arrival at the institution designated for service of sentence.

(2) Inmates will receive a program review at least once every 180 calendar days. When an inmate is within twelve months of the projected release date, staff will conduct a program review at least once every 90 calendar days.

(b) *Inmate appearance before classification team:*

(1) Inmates will be notified at least 48 hours before that inmate's scheduled appearance before the classification team (whether for the initial classification or later program reviews).

(2) Inmates may submit a written waiver of the 48-hour notice requirement.

(3) The inmate is expected to attend the initial classification and all later program reviews.  If the inmate refuses to appear at a scheduled meeting, staff must document on the Program Review Report the inmate's refusal and, if known, the reasons for refusal, and give a copy of this report to the inmate.





EXHIBIT
A

P  1 of 1

## Nora Littlejohn - Fwd: Rosters

**From:**      Julia Carrasco
**To:**        Nora Littlejohn
**Date:**      11/5/2015 10:53 AM
**Subject:**   Fwd: Rosters
**Attachments:** rosters.docx

>>> Elvira Morales 10/12/2015 8:18 AM >>>
Be advised some of them are the same from last time!
Please correct ASAP.

Elvira Morales
SHU Case Manager
Reeves County Detention Center I&II
98 West County Road 204
Pecos, TX. 79772

Tel: 432 447 2926 • Ext:1156 • Fax: 432 447 2083
emorales@geogroup.com
www.geogroup.com

*This email and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. If you are not the intended recipient or the person responsible for delivering the email to the intended recipient, be advised that you have received this email in error and that any use, dissemination, forwarding, printing or copying of this email is strictly prohibited. If you have received this email in error, please immediately notify by replying to this email.*

I took over
6 unit on October 12, 2015

The custodies
in that case load
were already
late.



EXHIBIT
B
tabbies



## LATE CUSTODIES (4 MONTHS FROM ARRIVAL DATE)
UNIT C 47128-008 AMAYA HELEDORO 06-12-2015 C02-017U
UNIT A 21853-058 RODRIGUEZ- PEDRO 06-15-2015 A08-007U*LATE ON 10.15.15
UNIT D 42188-408 CASTILLO-M JAIME 06-15-2015 D07-002U *LATE ON 10.15.15
UNIT F 07479-032 HERNANDEZ- JOAQUIN 06-15-2015 F01-001U *LATE ON 10.15.15
~~UNIT G 44122-408 MENDOZA-A ALFREDO 06-15-2015 G06-008U *LATE ON 10.15.15~~
~~UNIT A 34085-408 ZUNIGA-DE JOSE 06-15-2015 A08-003U *LATE ON 10.15.15~~
~~UNIT C 42512-008 AYALO-GUET LEE 06-15-2015 C06-025U *LATE ON 10.15.15~~
*LATE BY MONDAY 10.19.15:
UNIT E 28515-380 PALENTINA JUAN 06-19-2015 E08-004U
~~UNIT C 81092-179 CERVANTES-GAM LEY 06-19-2015 C06-025U~~
~~UNIT C 864       AVILA-DELG G ALDIO 06-19-2015 C01-003U~~
~~UNIT C 97809-279 CLEMENS-GA AMA 06-09-19-2015 C06-023U~~
UNIT B 42707-083 LLOYD ERROL 06-23-2015 **12-04-2014** (old custody) B07-003L
**LATE YEARLY CUSTODY**
UNIT D 68106-180 VILLA-MORA JOSE 06-19-2014 10-06-2014 D03-009L
UNIT A 04586-408 ARBALLO-SO FRANCISCO 06-26-2014 10-07-2014 A03-024L
UNIT A 67977-051 BARRERA-ES MAURO 06-16-2014 10-07-2014 A03-016L
UNIT A 95572-279 MENDOZA-ME GERARDO 06-18-2012 10-07-2014 A01-014L
~~UNIT C 15582-408 PHO MANANY SION DETH 04-08-2014 10-02-2014 C06-013U~~
~~UNIT C 34147-179 GARCIA-PEN DAMIAN 10-81-2013 10-09-2014 C04-021U~~
UNIT B 87861-308 ROMERO-NUN LUIS 12-31-2013 10-10-2014 B01-026U
~~UNIT C 65920-08 PEDOZU-A JORGE 04-16-2014 10-13-2014 C04-015U~~
UNIT B 00597-408 ARANDA-RAM ALFREDO 06-17-2014 10-15-2014 B03-005L
UNIT B 24784-380 RODARTE-ES MIRSHA 06-16-2014 10-15-2014 B02-024L
~~UNIT C 23175-08 REH MANNA VED 04-13-2015 10-15-2014 C06-020U~~
**MISSING FST**
**NOTE: i/m arrived on 10.08.15**
2GM UNIT A 58479-380 GALLEGOS-R JAVIER MEXICO 10-08-2015
2GM UNIT F 31475-308 GARCIA-HUE JUAN MEXICO 10-08-2015
**LOWER BUNK (MEDICAL BUNK)**
C01A C01-012U 17514-097 QUINTERO-F CESAR LOWER BUNK
C01A C01-025U 28072-379 AVALOS-MUN RAFAEL LOWER BUNK
C02A C02-009U 10265-008 CRUZ-LOPEZ RAFAEL LOWER BUNK
C07A C07-009U 46366-408 GASPAR-GAS FRANCISCO LOWER BUNK
~~C02A C03-029U 47052-279 ORTIZ-HA HILVINLOWER BUNK~~
~~C03A C04-02 49788-208 GARCIA-A ARNI LOWER BUNK~~
**NEED CUSTODY DUE TO INCIDENT REPORT**
E07A E07-008U 83504-279 RAMIREZ-CO 09-08-2015 09-15-2015 05-28-2015 307
D07A D07-008U 68154-180 RAMIREZ-ES 08-26-2015 09-02-2015 08-28-2015 228
~~E06A E05-030U 09273-180 MENDEZ-VE 09-26-2015 09-02-2015 05-28-2015 228~~
E01A E01-002L 72578-008 HOYOS-MEND 08-27-2015 09-02-2015 03-23-2015 305
Z02A Z02-244LAD 53584-180 MARTINEZ-H 08-24-2015 10-07-2015 07-14-2015 216
E02A E02-007U 44258-086 PACHECO-GO 07-29-2015 08-23-2015 05-07-2015 228
A01A A01-010L 07974-359 ARMENTA-RO 07-10-2015 08-03-2015 01-16-2015 228
**MISSING ITT CODE AFTER PGM REVIEW**
F01A F01-010U 00386-380 SANCHEZ-HE HONDURAS 09-16-2015 170 12-29-2015

To:  Human Resources

From:  Nora O. Littlejohn
      Case Manager

Date:  November 30, 2015

Persons involved:  Unit Manager, Ms. Diana Molina
                    Unit Manager, Ms. Maria Lopez
                    Assistant Warden of Security, Robert Ellis

Ref:  Ms. Molina – Lying, Abuse of Authority, Gossip, Ruining my Reputation,

      Ms. Lopez – Hostile Work Environment, Lying, Conspiracy, Favoritism, Gossip,
      Abuse of Authority

      Mr. Robert Ellis -  Violation of my Civil Rights

I am prepared to provide witnesses, written memos, policy, sentry rosters, and if permitted the facility's taped videos to prove each allegation.  I am seeking termination of each one of these individuals and the removal of the write ups from Ms. Lopez and Ms. Molina that are currently in my personnel file.

# Unit Manager Diana Molina

I will start out with the disciplinary write up issued by Ms. Molina.  She states that programs were dropped file and were not complete, but entered in Sentry as complete.

## False Allegations on her write up against me:

1. Program Statement P5322.13 page 6, clearly states:  The case manager schedules the inmate's appearance before the unit team, and provides a "VERBAL" summary of the inmate's:

    . Current offense
    . Prior Record
    . Social Situation
    . Security/Custody classification
    . Central Inmate Monitoring System
    . Financial Responsibility Program System (CIM) concerns:
    . Release Preparation Program participation, special programming considerations,
       (Drug Abuse Program, Mental Health Program, etc.)

a. This criteria was met, therefore, I had a right to update sentry as the inmate's part was completed.



EXHIBIT

C



b. I did not have access to "Geo" to obtain the information pertaining to their financial account, and the status of their financial responsibility. Ms. Molina was well aware that my computer does not have access to the "Geo" system. The "Geo" adjacent to my office is as slow as Christmas and I relied heavily on my co-worker, Julia Carrasco for a lot of the printouts.

c. I was under the supervision of unit manager, Ms. Molina, for approximately four months and the whole time, she was well aware that I kept my "work-in-progress" files next to my desk, because she counted these files weekly when we do file census.

d. The programs that I conducted weekly are greater than the number of programs conducted by the other case managers in the entire facility, because both Ms. Julia Carrasco and I, had the whole unit (total capacity of two hundred and eighty eight inmates) in our case load. The facility should realize it is humanly impossible to finish our programs without having to go into overtime.

The facility took away the runner and placed her in F Unit. Both, Ms. Carrasco and I, did not have the luxury of having a regular case load, much less a small one like E, J, and H units. But, I will go into detail later and explain why Ms. Molina decided to write me up for "Gross Negligence in the performance of my duties".

2. Ms. Molina states that she gave me Mondays and Tuesday to complete my programs. Mondays were the regular scheduled programs days with Tuesday as an extra day to complete programs.

Factors contributing to delaying the completion of the programs.

a. The first Tuesday of September, through no fault of my own, I was instructed by Ms. Molina to conduct 5 UDC's on the inmates housed in my caseload, which took all morning up to the time we had to leave for mess hall.

b. The second Tuesday, we were assisting auditors from Big Spring for four days. This entailed pulling central files, escorting the auditors around the facility, and unlocking office doors, and file cabinets for them.

c. The third Tuesday fell on the week that our unit team was conducting the screening of the new arrivals to the facility. (Plus my regularly scheduled Monday for programs was interrupted with an expected death of a family member.) We had buses everyday that week with a late bus on Friday evening.

d. The fourth Tuesday was a mandatory training day for treaty transfers in the Ad bldg.

e. The last Tuesday of the month was a Dr. 's appointment due to my high blood pressure and an eye doctor appointment (due to experiencing severe headaches) on the 23rd of September.

f.  I had no "Geo" access in my office.

**3.** Ms. Molina accuses me of not having better time management!!!!!!

Hello! I conducted 132 programs reviews that month that were completely finished and filed away before the end of the month.  We had arrival week, we had auditors for four days, I was pulled away from my regular work schedule to assist with interviews for the inmates in F Unit.  I had "open house" for the inmates three days out of the week, completed releases for the whole month of October and November, one funeral, and two doctor's appointments.  Custodies were all updated and I file my own paperwork.  Ms. Molina seems to forget that that I was carrying the whole unit by myself (up until the last week of October), which houses a total capacity of two hundred eighty eight inmates and was not allowed any overtime.

To my knowledge, case manager Julia Carrasco is the only other case manager in the whole facility that was given the whole unit to carry by herself, and she too, was unjustly wrote up for Gross Negligence.

# Reasons for my Grievance

## Retaliation:

During the month of September, the inmates in cell C7 were destroying government property by breaking the mop and broom handles.  The inmates were also suspiciously putting up laundry strings and hanging clothes to cover up the view from staff.  There are also other issues I was dealing with but for now, I will only go into the reason why Ms. Molina wrote me up.

This conduct displayed by the inmates in cell C7 led to thirteen write-ups.  Administrative Captain headed the investigation with the assistance of his Lieutenants.  The outcome:

Captain Porras not only took down their laundry strings and confiscated several batteries that the inmates were using to anchor the laundry strings, but this also initiated a shakedown of the tank in which a tattoo machine was discovered by officer Pyle, which confirmed my suspicions that they were involved in illegal activity within the cell.

Ms. Molina and case manager Nadia Valenzuela conducted the disciplinary hearing.  I was in my office when I saw the copies of the of the write ups.  They read "INFORMALLY RESOLVED", which basically they were being dismissed.  The reason for the reports not being sanctioned were given as:
        **"Due to the "INMATES BEING IN THE REC YARD".**

I confronted Ms. Molina.  She was very upset and not only was I accused of wasting her time, I was also accused of picking on the inmates in C7.  She even asked me how come I was not writing the other inmates in the other units.  (I could hear the inmates talking through her words.)  She further stated that several of the inmates alleged that there were no strings on their bunks.  I was told that from here on out, I was not "ALLOWED TO WRITE UP INMATES WITHOUT HER AUTHORITY".  I reminded her that Captain Porras had taken down the strings.  I reminded her if she had forgotten



the inmates were destroying property and that the officers had found the tattoo machine that we had suspected. Ms. Molina basically called me a liar by arguing that there was no tattoo machine found.

There were only three inmates sanctioned out of the thirteen write ups. Even though the investigation by the Lts. clearly stated they had laundry strings. The three inmates found guilty were sanctioned with two weeks loss of commissary.

As result, I was forbidden to write up inmates without her approval. From here, her attitude towards me changed considerably. Then days later, I was cited with a disciplinary.

## Lying

I was called into Warden Henderson's office. His first words to me were, "I'm deeply disappointed in you, Ms. Littlejohn". He went on to tell me that Ms. Molina had advised him that I had refused to give her the PDP-001 Disciplinary Incident Report back to her. This "is" an intentional, deliberate out right lie. Ms. Molina presented me with the write up at approximately 3:30 pm. I advised her that I needed the form to dispute the charges, to which she argued that there was no other form. To make a long story short, when she finally was able to obtain the form, I left her office under the impression that I would return it back to her in a complete packet.

Since, it was nearly 4:00 pm, Ms. Carrasco and I left the facility because there is no overtime allowed. On our way home, we had just past Barstow, when Ms. Carrasco rec'd a call from Ms. Molina on her "self phone" asking for the PDP-001 form. Ms. Molina was advised that I would turn around and head back to the facility, but reminded her that I was off the clock and it would take me a few minutes to get there. She stated, "NEVERMIND", she would just print another form from off the computer. So, Ms. Carrasco and I continued on home. The next day, Ms. Molina was in and out of my office that morning, and never mentioned the form to me.

After lunch, she called and asked for my copy. I advised her that I was in the middle of conducting open house and asked her IF SHE WANTED ME TO CLOSE DOWN and run the copy over to her office in D Unit and she said, "NO"!! She advised that I could run it over after I completed open house. When open house was completed, Ms. Carrasco and I looked for Ms. Molina's whereabouts only to find out that she had already left the facility. My only recourse was to turn it in to Humane Resources ( Ms. Nichols). I advised her that I had attempted to give it to Ms. Molina, but she had already left the facility.

## Gossip and Giving Me A Reputation of Wasting Time

Since then, Ms. Molina has repeatedly gone around telling staff that I need to work on better time management and that I was wasting my time by doing security's job duties.    To all the unit managers, and Ms. Carrasco.

Ms. Carrasco and her had an argument over Ms. Molina adamantly accusing me of not finishing the October and November releases because the record department had called for the paperwork. Ms. Carrasco took up for me and advised her that she assisted with printing out the photos for the releases as I did not have an available working Geo system, and that she had accompanied me to records to drop off the paperwork. Ms. Carrasco told her that records was overwhelmed and that

they had probably "lost" the paperwork which is getting to be a habit with records. Because Ms. Molina argued that I HADNOT COMPLETED THE RELEASES, Ms. Carrasco asked her if she had checked the central files for the fax cover proving that the paperwork had not only been completed, but also proved that the completed releases had been faxed out to the probation officer for each sentencing district. Ms. Molina admitted that she had not. Luckily, records was able to find the release paperwork that I had submitted.

Ms. Molina told the whole facility that I wasted my time with the write-ups and searching for property boxes for the inmates in C. The irony of this is that Ms. Molina has placed the burden of filling out each inmate's time sheets to the unit clerk, Syrah Natividad, when this task belongs to security.

Ms. Molina has not only deliberately placed this burden on her, we have had to help her complete the inmates' time sheets at the end of the month. We literally have to falsify how many hours they work daily, because Ms. Molina consistently forgets to put out the DUMMY sheets for the inmates to sign. Security is responsible for filling out the total number of hours worked at the end of their shift as some of these inmates are already working at 6 AM and sometimes as late as 9 PM, depending on their work task. But thanks to Ms. Molina, we were always caught helping Ms. Natividad falsify their hours to meet the deadline. The time sheets are due at the beginning of each month and are turned in to the business office with the officer's signatures. How's that for falsifying and wasting time, when we are not even responsible for filling out the daily hours the inmates work. Business Manager Eddie Pallanes can confirm this as he teaches this class yearly.

## Abuse of Authority`
I do not believe that Ms. Molina had the right to forbid me from writing up inmates in my housing unit. She also had full knowledge that I had an overwhelming case load with no allotted overtime to complete my daily job duties and she still chose to do a disciplinary write up. The fact that Ms. Molina was my unit supervisor for over a period of 120 days and she knew I had a cabinet file for placing uncompleted work files, is a clear indication that she has no fear of fabricating allegations as upper management clearly supports her. Ms. Molina has counted my "work files in progress" numerous times when we do weekly census, and so has the unit clerk Syrah Natividad and co-worker Julia Carrasco.

I also will add that program statement P5322.13, page 7, clearly states that any inmate who fails to appear for programs, is subjected to disciplinary action. But because, I could no longer write up inmates, Ms. Molina expected me to chase them down for completion of their programs.

## Conspiracy
Due to this write up, I was moved to G Unit under the supervision of Unit Manager Maria Lopez. Until recently, I found out that Ms. Molina and Ms. Lopez deliberately instructed previous case worker Alex Garcia to cancel his weekly program reviews knowing that I would have to conduct the programs myself. Program Reviews were conducted on the 14th of October in G Unit and the programs in G Unit were already due on the 16th of October. Clearly this is proof that both Ms. Molina and Ms. Lopez did not care that the programs would over lap with mine. This is a deliberate act on both Ms. Molina and Ms. Lopez to over load my work. For whatever reason, I can only think that they were being vindictive. Mr. Alex Garcia was nice enough to be honest and gave me a signed statement of their premeditated and vindictive motive to overload me with added programs.

24

In conclusion, Ms. Molina is clearly a liability to the running of this institution, with her false allegations and abuse of her authority. I pray that this issue be resolved with the dismissal of her employment of this facility.

Attachments:

Printed memo from case manager Alex Garcia
Sentry rosters
Program policy
Printed Calendar of daily work activity


IF NEEDED: witnesses:

Julia Carrasco, Case Manager
Syrah Natividad, Unit Clerk
Administrative Captain, Isaiah Porras
Warden Henderson
Eddie Pallanes, Business Manager
Facility taped videos



# Unit Manager Maria Lopez

## False Allegations on her write up against me:

Ms. Lopez clearly uses the words APPEARS that the inmates sign WITHOUT any discussion: I have proof that each one of these inmates were pulled out of their housing unit as the officer on duty is not only given a list of the inmates scheduled for programs, but the officer himself pulls them out of their housing unit. They are also escorted to my office. There is a camera in the unit showing the inmates being brought out to my office. I would also quote the policy for programs:

1.  Program Statement P5322.13 page 6 clearly states:  The case manager schedules the inmate's appearance before the unit team, and provides a **"VERBAL"** summary of the inmate's:

    . Current offense
    . Prior Record
    . Social Situation
    . Security/Custody classification
    . Central Inmate Monitoring System
    . Financial Responsiblity Program System (CIM) concerns:
    . Release Preparation Program participation, special programming considerations,
        (Drug Abuse Program, Mental Health Program,etc.)

This criteria was met.

   *IF you will notice, Ms. Molina alleges in her disciplinary write up that the programs should have not been updated because she claims they were not complete, and Ms. Lopez is alleging the opposite. (Well, which is it?  Do I update the system or not?) **Contraditon**

**The truth is both, Ms. Molina and Ms.Lopez, don't have a clear understanding of conducting a program review.**

Ms. Lopez herself mentions that I was called out due to receiving an urgent call that a family member was gravely ill.   THIS WAS MY FATHER!!!!!!!!   My dad was dying. I am sadly submitting my dad's obituary.  I feel like I have to apologize for the fact that my dad's death was such an inconvenience to Ms. Lopez.

Ms. Lopez states that the PP 10"s were printed the same day.   The inmates were programed that same day, regardless whether you file the paperwork in their central file that day or not has no bearing on



"Violating the vital functions of a program."

Ms. Lopez states that the central file activity forms did not reflect the recent activity by the case manager.    False allegations again.  I can produce several of the central file activity forms that reflect that the programs were done that day.  The ones that didn't, I did not complete because I left to see about my father.    I can also produce the ones completed by Mr. Ayala who is Ms. Lopez's renter and Ms. Molina's son.  It will clearly show his lack of program activity on his files.
And let me add that none of us had access to Geo to obtain the financial status of the inmates.
She intentionally left that off her allegations.

## LATE CUSTODIES

She lied again, stating that I was given overdue custody forms that I was to complete by the end of the day.    SHE IS LYING.  The unit managers were conducting audits in my unit that day.  That day was total chaos.  She gave me instructions on the 12th to complete MR.GARCIA'S LATE CUSTODIES and she is trying to write me up for HIS late custodies.  Seems to me she should have wrote up Mr. Garcia.  (Please keep in mind, I started G Unit on the 12th of October, 2015.)

She states that when I left the facility, I left paperwork all over the desk.  Does this woman have no remorse?

This is another deliberate ,intentional lie.  I have memos to attest that she fabricates these accusations.

*****I want to let Human Resources know that Ms. Lopez states that I had inmates sign blank forms without any discussion.  Then, she turns right around and has Ms. Lorena Garcia finish my so called blank program forms without even interviewing the inmates.  Ms. Garcia took the forms to Mr. Flores office in the AW Complex and finished them there by using my forms and DID NOT interview the inmates  The reason I know?  She told me herself, when I called to thank her for helping me finish the paperwork.  She admitted that CMC David Florez instructed her to complete them at his office.

***The Irony of this: This is what she alleges I did!!!!!  Ms. Lorena Garcia was noting down that these inmates were to take horticulture programs and keyboarding, when these inmates were releasing.  We do not recommend any measureable goals to inmates that are fixing to release!!!!  Ms. Garcia herself told me that the inmates were not interviewed.    But I did interview all of the inmates on my program docket.  Ms. Lorena Garcia did this in good faith, and because she just recently became a case manager; she is not experienced enough and apparently has not been properly trained.

## Retaliation

I returned to work on the 23rd day of October, 2015.  My dad was buried on the 20th.  Ms. Lopez wrote me up on the 2nd day of November, 2015.  She did this after we had a verbal confrontation in her office over her gossiping and making fun of me to another co-worker.  She did not dispute this.  I also tried to see if we could work together instead of her working against me, but she refused and stated she didn't care and she was not going to change.  When I spoke to Warden Henderson and advised him I was not going to take her hostility any more, he stated he would talk to her.  This was on a Friday evening, Oct. 30, 2014 at 3:30 that afternoon.  Warden Henderson spoke with Ms. Lopez the following Monday, November 2 ,2015.  I received the write up later that afternoon before leaving work.  My point is that

she had over a week to write me up, but chose to do so after Warden Henderson advised her to back off.

## Favoritism and/or discrimination
### Case Manager Joey Ayala is Ms. Lopez's renter and Ms. Molina's son

## I am not allowed to:
Do programs by myself

Do programs without notifying inmates in advance of their program date and time

Skip Break (Mandatory 31 minute break for all staff)

I have been told repeatedly that I am to be two weeks ahead of the next program date

We are not allowed to have two inmates in the office, while conducting programs, much less have an inmate interpret for staff

Ms. Lopez was adamant that she was going to train the new clerk and that she was going to train her "Her Way". .What she really meant was that I was not allowed to teach her.  However on the 1st day at work for the unit clerk, Ms. Ramos;  Ms. Lopez had Mr. Ayala training her.


## My co-worker, Mr. Joey Ayala, is allowed to do the following:

Do Programs by himself  (By his own admission)

Is allowed to randomly pull inmates out at various times to conduct programs at his own choosing without any notification to the inmate.  He types a "dummy"docket roster to cover up the fact that the inmates are not being notified in advance.   Program statement: P5322.13 Page 7

Mr. Ayala is allowed to periodically skip breaks and leaves early.
   ***Note:  Mr. Garcia had noticed the favoritism shown to Mr. Ayala because he himself was subjected to the same.  But, he added that Ms. Lopez seems to show her hostility to females only.


I was instructed on my first day at G unit that I was to sit in on Mr. Ayala's programs and he was to do the same.  My first program day, I asked Mr. Ayala to sit in on my programs, and Mr. Ayala stated to me that he didn't have to because Ms. Lopez allows him to conducts his programs on his own.  When I pleaded to him that I feared being caught, Mr. Ayala stated not to worry that he would speak with Ms. Lopez so that I would not get in trouble.  This seems to me that he is allowed to do whatever he wants under Ms. Lopez's supervision because he has no fear of getting in trouble.

## Abuse of Authority

Ms. Lopez shows no qualms about making false accusations because she too knows that upper management allows it.  The fact that Mr. Ayala is allowed to conduct programs against policy and I m not, is a total abuse of her authority.  I was micro-managed.  I was overloaded with job duties.  She daily reminded me that I was to take a 31 minute break and I was not allowed to go over 8 hours.  She would pull "chronos" just to show me that I needed to keep a close watch on my time.  I can produce a



list of previous employees that were subjected to her abuse. Two of which already resigned. She has a repeated hostile behavior and is known to give extra job duties as a mean of retaliating against employees.    My list includes the following:  Case Manager Julia Carrasco, Case Manager Nadia Valenzuela,. unit clerk Mary Evaro (resigned), unit clerk Ms. Portillo, and former case manager Chabarria.  However, none of these employees opted to file hostile environment till now.  Case Manager Alex Gracia advised me that he would be willing to testify that she does show favoritism to case manager Joey Ayala.

# Conspiracy

I have a memo from Mr. Garcia stating that both Ms. Molina and Ms. Lopez had every intention of overloading my job duties.

ATTACHMENTS:
Signed memo from case manager Alex Garcia
Signed memo from case manager Ms. Dolores Mitchel
Sentry rosters
Program policy
E-mails from Case Manager Julia Carrasco


(IF NEEDED) witnesses:

Julia Carrasco, Case Manager
Syrah Nativida, Unit Clerk
Lorena Garcia, Case Manager
Joey Ayala, Case Manager
David Florez, CMC
Warden Henderson
Facility taped videos.



## Assistant Warden of Security, Robert Ellis

## Violation of my civil rights:

My civil right to be heard
My civil right to have witnesses
My civil right to defend any allegations charged against me

In all honesty, I seriously believe Mr. Ellis has no concept of what a program review entails, as he is over security and not programs.  He is either unqualified to fully investigate the accusations against me, or he simply does not want to take the time to look into the matter.

During the disciplinary hearing, Mr. Ellis was stuck on the same question, "Did you have the inmate sign a blank form?   Over and Over.  He would not allow me to speak or explain the matter.   The blank forms were inmates that were fixing to release and we DO NOT recommend measureable goals to these inmates because they are releasing!!!!!!!

I have been a case manager for ten years now, and have been conducting program review before the facility even had access to sentry.  All our paperwork was done manually and without any access to the information obtained from the BOP sentry systems.  We literally flagged our central files with colored stick on dots to help us classify the inmates in our case loads.  If this does not make me an expert in conducting programs, I don't know what will.

Warden Ellis had violated my civil rights once before, but I did not pursue this issue until Warden Thompson threaten me with my job, should this happen again. My whole life depends on this job, simply because I am already 61 years old, and all I have is a high school education.  I have worked for law enforcement for forty years now, and my termination from this job will basically end my career in law enforcement.

I also resent Warden Ellis' sarcastic remark, when he would not allow me to be heard.  I took a deep breath as I felt I was loosing my composure.  He stated,

30

"Don't get mad." I remarked, that I was only taking a deep breath, then he sarcastically remarked, "Well, take two".

My sole witness will be Human Resources staff member, Alicia Nichols.
Attachment: Program Statement Policy

31

## Assistant Warden of Programs, Henderson

### Conspiracy / Hostile Working Environment

On October 30, 2015, at approximately 15:30 hrs, I met with Warden Henderson to complain about the hostility being display towards me by Unit Manager Maria Lopez.  At first, Warden Henderson tried to blame this feeling I had on my father's death. (He died on October 17, 2015.)  After several attempts to make him understand what I was going through, he finally commented that he would speak to Ms. Lopez.

Warden Henderson spoke with Ms. Lopez on Monday, November 2, 2015.  I received the write up later that afternoon at approximately 15:30 hours.

On November 12, 2015, I was in G Unit and witnessed case manager, Joey Ayala, conducting programs by himself which he has done since I arrived at G Unit.  I called Warden Henderson who was at the time at visitation.  I requested that he come down to G Unit and alerted him that Mr. Ayala was again conducting programs on his own.  Warden Henderson replied that he was unable to because he was at visitation in the middle of orientation at the moment.

Days later, Ms. Lopez and I again were in disagreement over her changing her story.  I asked if from now on, she would just email my instructions to prevent further misunderstandings, and she said NO! I don't have to, you just need to listen.  I told her that was the problem.  She changes her story.  She left her office a few minutes later.  When I went to the AW complex, I saw Ms. Lopez coming out of Mr. Henderson's office.  She smiled at me as we made eye contact. Later that afternoon, I called Warden Henderson to speak about the

tension and hostility becoming unbearable and he remarked, "Well, from what I hear, Ms. Littlejohn, you just don't listen very well." I thanked him and hung up the phone.

We had a case manager's meeting on the 3rd day of December, 2015. The remarks made at the meeting by CMC David Florez that day were (I felt) directed at me. Warden Henderson had already left the room, and had turned the meeting over to CMC David Florez.

**It was announced that there will be no moves for any of the case managers. You will remain with your current case load, and if you just can't get along, then you need to go find somewhere else to go.

The mandatory 31 minute break is now left up to the unit managers.**

Yet, Ms. Molina and Case Manager Valenzuela had a confrontation during the month of Feb 2016 and Ms Valenzuela Valenzuela was moved out of Ms. Molina's unit team.

I was not allowed to move move out of Ms. Lopez's unit though I Reported her towards me.
Littlejohn.

58

## Non-Exempt Performance Evaluation
(Confidential)

| Employee Name  Nora Little John | | |
| Title   Case manager | Review Date  02-10-2016 | Next Review Date  -2-10-2017 |
| Review Period  ☒Annual | ☐ Introductory | ☐ Close-Out (prior to transfer/promotion) |

|  | | Above Expectation | Acceptable | Below Expectation |
|---|---|---|---|---|
| 1. | **Attendance and Punctuality** – Reports to work on time and as scheduled ............................. | ☐ | ☒ | ☐ |
| 2. | **Conduct** – Conducts oneself honorably, with maturity and integrity ................................. | ☐ | ☒ | ☐ |
| 3. | **Communication** – Expresses oneself verbally and in writing in a way that is readily understood ....... | ☐ | ☒ | ☐ |
| 4. | **Dependability** – Exhibits flexibility with new assignments, projects, and demands of work environment ... | ☐ | ☒ | ☐ |
| 5. | **Responsibility** – Follows policies, procedures, guidelines, and assignments .......................... | ☐ | ☒ | ☐ |
| 6. | **Leadership** – Serves as a positive role model and sets a good example for others .................... | ☐ | ☒ | ☐ |
| 7. | **Problem Solving** – Identifies problems and implements acceptable solutions.......................... | ☐ | ☒ | ☐ |
| 8. | **Work Ethic** – Performs duties professionally, timely, and responsibly .............................. | ☐ | ☒ | ☐ |
| 9. | **Relationships with People** – Deals effectively with clients, visitors, management, employees, inmates/detainees/residents | ☐ | ☒ | ☐ |
| 10. | **Teamwork** – Cooperates with others to achieve common goals ...................................... | ☐ | ☒ | ☐ |
| 11. | **Technical Skills and Training** – Demonstrates knowledge, abilities, and competence ................ | ☐ | ☐ | ☒ |
| 12. | **Time Management** – Uses time wisely in an effective and efficient manner ......................... | ☐ | ☐ | ☒ |

OVERALL PERFORMANCE RATING........... ☐ ☒ ☐

*Use additional sheet if necessary)*
**RECOGNITION** – Provide examples where employee demonstrated excellent performance or exceeded expectations. ✓

*Has not been late on Custody /or Programs since Write-up;*
*Catches errors that have been made by Previous Case Manager*
*and corrects.*

**PERFORMANCE GOALS**

Has employee been formally disciplined during review period?  ☐ No  ☒ Yes, provide reason  *Not completing Program reviews / and entry into Sentry*

Does employee need improvement in any area?  ☐ No  ☒ Yes, provide reason  ???

List employee's developmental needs to meet or exceed expectations.
*No error rate on Programs, or release Paper Work.*

PERFORMANCE RATING SCORE (Circle One)...  1  2  ③  4  5

**COMMENTS**

*Since her write-up Mrs. Little John has not had any discrepan-*
*cies are completed/ sentry is up dated/ Program Reviews are being conducted*
*correctly, no Blank P6mb. Time Management has improved.*

M. Hons  2-10-16            (signature)  2-10-16

Employee's Signature / Date        Supervisor's Name (Print)        Supervisor's Signature / Date

| Manager Review | Facility Administrator Review | Human Resources Review |
|---|---|---|
| Date  2/10/2016   Initials  MRIK | Date _____  Initials _____ | HRIS Entered Date _____   Initials _____ |

**Performance Score Definitions**
1. **DISTINGUISHED** — Performance far exceeds normal requirements of the job. Outstanding nature of performance is evident to anyone in a position to observe and evaluate. Very few are able to reach this level of accomplishment.
2. **COMMENDABLE** — Performance clearly exceeds the requirements of the job and is worthy of special note. Accomplishment indicates extra thought, effort, imagination, and results.
3. **COMPETENT** — Performance clearly meets the requirements of the position.  Continued performance at this level would be perfectly acceptable. Accomplishment reflects a solid level of performance.
4. **NEEDS IMPROVEMENT** — Performance is below Competent. Employee must improve because continued performance at this level is unacceptable.
5. **UNACCEPTABLE** — Performance is clearly unsatisfactory and below expectations.

REV 01/11


EXHIBIT
D



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Littlejohn   First Name: Nora   MI: O

Street or Mailing Address: 808 South Allen Street   Apt or Unit #: N/A

City: Monahans   County: Ward   State: TX   Zip: 79756

Phone Numbers: Home: (432) 943-2908   Work: (432) 447-2926

Cell: 432 631-9070 (spouse)   Email Address:

Date of Birth: 05-27-1954   Sex: ☐ Male ☒ Female   Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions.   i. Are you Hispanic or Latino? ☒ Yes ☐ No

ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? SPAIN/Mexico

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Kenneth D. Littlejohn   Relationship: Husband

Address: 808 S. Allen Street   City: Monahans   State: TX   Zip Code: 79756

Home Phone: 432 943 2908   Other Phone: (432) 631-9070

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Reeves County Detention Center I & II

Address: 98 West Co Road 204   County: Reeves County

City: Pecos   State: TX   Zip: 79772   Phone: (432) 447-2926

Type of Business: Government (Prison)   Job Location if different from above Address:

Human Resources Director or Owner Name: Laura Rodriguez   Phone: 432 447 2926

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☒ 201 – 500   ☐ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No

Date Hired: 01-13-2005   Job Title At Hire: Correctional Officer

Pay Rate When Hired: $11.00 an hour(?)   Last or Current Pay Rate: $20.40 an hour

Job Title at Time of Alleged Discrimination: CASE MANAGER   Date Quit/Discharged: N/A

Name and Title of Immediate Supervisor: Maria Lopez Unit MANAGER

If Job Applicant, Date You Applied for Job N/A   Job Title Applied For N/A

**EXHIBIT**

E

4. What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☑ Sex ☑ Age ☐ Disability ☐ National Origin ☐ Religion ☑ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing  ii. family medical history  iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: ___N/A___

If you checked genetic information, how did the employer obtain the genetic information? ___N/A___

Other reason (basis) for discrimination (Explain): _____

5. What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: _____ Action: _____
   See attachment

Name and Title of Person(s) Responsible: _____

B. Date: _____ Action: _____

Name and Title of Person(s) Responsible _____

6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.
   See attachment

7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?
   See attachment

8. Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you? (shown favoritism)

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Joseph (Joey) Ayala | Hispanic Male | Case Manager | Total disregard to violating facility's policies & guidelines |
| B. | | | |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|------|---------------------------------------------------------|-----------|-------------------------|
| A. Julia Carrasco | Hispanic Female | Case Manager | hostile work Environment & Retaliation |
| B. Cynthia Chabarria | Hispanic Female | Case Manager | hostile work environment |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|---------------------------------------------------------|-----------|-------------------------|
| A. Danielle Garcia | White Female | ex- Case Manager | Unjustly TERMINATED |
| B. | | | |

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

N/A 9. Please check all that apply:
- ☐ Yes, I have a disability
- ☐ I do not have a disability now but I did have one
- ☐ No disability but the organization treats me as if I am disabled

N/A 10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

N/A 11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

N/A 12. Did you ask your employer for any changes or assistance to do your job because of your disability?
☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

How did your employer respond to your request? _____

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what the will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. Julia Carraso | Case Manager | Kermit, Tx 432-385-9177 (cellphone) | Ms. Lopez's display of hostility towards her, retaliation, and habit of fabricating lies. |
| B. Alex Garcia | Case Manager | Pecos, Tx 432-447-2926 work phone | Ms. Lopez's display of hostility toward "Females" and showing favoritism towards his ex-coworker Joe Ayala |

14. Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☒ No
Also she conspired with Ms. Molina to overload my caseload to deliberately create more pressure and stress

15. If you filed a complaint with another agency, provide the name of agency and the date of filing: Human Resources 11-30-2015 98 West Co. Road 204, Pecos, Tx 79772

16. Have you sought help about this situation from a union, an attorney, or any other source? ☒ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
I contracted Gerald Fugit, Attorney At Law on 02/15/2016
412 North Texas Avenue, Odessa, Tx 79761-5198

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

BOX 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____Norma D. Littlejohn_____          _____03-07-2016_____
Signature                                    Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)

3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

4



5 A  Date:  11-10-2015  Action: I was wrongfully given two days suspension without pay, based on false allegations issued by my immediate supervisor, Maria Lopez, unit manager. She cited seven reasons as to why I was being wrote up. "All seven reasons were false." I had witnesses, memos, policy statements, and emails providing more than sufficient evidence that Ms. Lopez's allegations were false.

At the disciplinary hearing, Assistant Warden of Security, Robert Ellis, would not allow me to speak, would not listen to my explanations, and basically violated my civil right to due process by not allowing me to defend myself, provide witnesses, and denied me the right to be heard.

Name and Title of persons responsible:

**Warden Bobby Thompson**: Person who gave me the two days suspension without pay.
**Assistant Warden of Security, Robert Ellis**: Person who conducted the disciplinary hearing.
**Assistant Warden of Programs, William Henderson**: Supervisor for unit manager, Maria Lopez, who not only encouraged Ms. Lopez to proceed with her false allegations towards me, but refused to listen to complaints of her hostile behavior and her constant manipulative fabrications of incidents that completely gave upper management the impression that I was insubordinate.
**Unit Manager, Maria Lopez**:  Immediate supervisor, who intentionally, knowingly, and deliberately fabricated false allegations on the disciplinary write up.
**Unit Manager, Diana Molina**: Previous immediate supervisor, who conspired with Ms. Lopez to set me up for an overload of extra work which led to the write-up where I was given two days suspension without pay. (Will go into detail later.)

6.  Between October 12, 2015 and November 10, 2015, co-worker Joey Ayala, case manager for G unit, has been allowed to conduct his daily work duties with total disregard to policy and procedure. He is also shown favoritism. (Mainly, I suppose this is due to the fact that he is Ms. Lopez's renter, and Ms. Molina's son.)

7.  Several:  Ms. Lopez's, (unit manager), has remarked, "No", that's not true. Even though, Mr. Ayala himself stated to me that Ms. Lopez was well aware of his disregard to work policy and in his words, "She's OK with it." I have also caught her lying on several occasions. I have asked her to e-mail any instructions regarding work to me to prevent any future misunderstandings, but she refuses to do so. She became upset and stated that I just needed to listen and she proceeded to cover her tracks by advising Mr. Henderson, (Assistant Warden of Programs), that I do not listen very well.  So, now, Mr. Henderson refuses to listen to anything I have to say.  I, now, stay completely away from Mr. Henderson and will "not" call him for any reason whatsoever, as this is a lost cause for me.  Ms. Lopez and Ms. Diana Molina, (unit managers), have already laid the ground work in brainwashing Mr. Henderson to thinking that I instigate problems within the unit. Mr. Henderson, has not once, heard my side of the issue.

For this reason, I was moved out of Diana Molina's, (unit manager), unit team because I was constantly finding several errors in the inmates' central files.  I was running a case load of approximately 280 inmates by myself, and was never late with my work load.  On the other hand, Ms. Molina was constantly loosing inmates' central files due to her allowing the unit clerk to not count the files daily as per policy.  Both Ms. Molina and the file clerk falsify the central file accountability book and she seemed to resent the fact that I constantly reminded her that files were missing. Ms. Molina retaliated against me for writing up the inmates in the unit. (In her words, I wasted her time. I was not allowed to write up anymore inmate without her approval.)  Which Ms. Molina can not forbid anyone to write up an

inmate when they are violating rules and regulations within the facility.   Shortly after this confrontation, I received a write up and was moved out of her unit team to Ms. Lopez's unit team. I found out later, Ms. Lopez and Ms. Molina, both, conspired to have me moved to a caseload that was behind in programs and custodies.

 Case Manager, Alex Garcia, was kind enough to type a memo for me stating that he had been instructed by both Ms. Molina and Ms. Lopez to cancel his programs for that week and was told to leave that work for me.  Mr. Garcia, also stated that he would be more than willing to testify that Ms. Lopez has a history of displaying hostility towards "FEMALES" only, and that she shows favoritism towards case manager, Joey Ayala.  Mr. Garcia was subjected to the same treatment as me and he, too, will attest to this.

Recently, Ms. Lopez gave me an evaluation that was below standards.  I refused to sign the evaluation as they were all based on her personal opinion and not on facts.  She marked down that I needed improvement, but could not explain why.  This was already foretold to Warden Bobby Thompson, when I filed the grievance with Human Resources.  In the grievance, I specifically stated, that I could not work under Ms. Lopez as she already has a reputation for being hostile towards female staff and for lying.  I made mention that I was being targeted for termination and I already knew she would be issuing a "Below Standard" job performance evaluation on me, when I have been doing this job for well over 10 years and have never ever received a "bad" job performance evaluation.

Mr. Henderson, (assistant warden of programs), was once called to come down and see for himself when Mr. Ayala was conducting "Programs" against policy.  Mr. Henderson clearly stated,  "I can't come down because I'm in the middle of orientation."  This issue was totally swept under the carpet, even though Mr. Henderson was well aware that I had recently been suspended for what Mr. Ayala has always done, and continues to do so, with no qualms of being wrote up as Ms. Lopez fully supports him.

Mr. Henderson, (Assistant Warden of Programs) considers Mr. Ayala, (case manager) to be a "Good Old Kid from Southern California," as he once told me in his office. So, I guess, this makes Mr. Ayala exempt from following policy and procedures.

At a case manager's meeting, we were told that no case managers would be moved and if we just didn't get along, we could find somewhere else to work.  This was also sent out as an email to all case managers by AWP William Henderson.  Just recently, I was made aware that Ms. Molina and one of her case managers, Nadia Valenzuela had had a confrontation.  Yet, she was moved to a case load of less than 100 inmates.  This was done after the email was sent out to us that under no circumstances were we to be moved to a different case load as we just NEEDED TO GET ALONG.

8A.  Persons treated the same as me:

On November 6, 2014,  inmate Faustino Plancarte, #59699-019, was found guilty of "Threatening to do Bodily Harm" and was unjustly given the following sanctions:

27 days loss of good conduct time
30 days segregation
60 days loss of commissary, phone, and visitation privileges

The sanctions were implemented due to the Assistant Warden of Security, Robert Ellis, refusing inmate Plancarte's right to have a witness brought to the disciplinary hearing.

I was present at the disciplinary hearing when the disciplinary hearing officer, (Mr. Baeza), advised AWS Robert Ellis, that he needed Plancarte's witness to be escorted from J Unit to his office in order to conduct the hearing.

AWS, Robert Ellis, refused to have the witness escorted to the disciplinary hearing. DHO Baeza in a panic, asked me as to what he should do. I advise him that the inmate was entitled to a witness and he had already signed the form requesting a witness at his hearing. DHO Baeza was reluctant to proceed with the hearing, and finally decided to talk inmate Plancarte into signing a new form indicating that he was refusing to have a witness. Inmate Plancarte refused to sign the new form, but eventually was talked into signing the form against his will by the DHO.

During the hearing, inmate Plancarte testified that Major Luciano Reyes had been in his housing unit being abusive and had falsely accused him of being loud. Inmate Plancarte stated the major was under the influence of alcohol because he could smell the alcohol on his breath. Plancarte admitted to telling the major to back off because he smelled like alcohol, and this is when the major ordered him to "CUFF UP". Plancarte went on to say that the major went to the segregation the next day to apologize and to promise him that he would give him back his loss of good conduct time and he would get him out of segregation. (The major has no authority to give any inmate back their loss of good conduct time. The Regional Administrative Office for the Bureau of Prisons in Washington, D.C., is the only authority with the power to reverse the DHO'S sanctions.)

The report submitted to Washington, D.C., by the DHO did not make mention that the inmate testified that Major Luciano Reyes was under the influence of alcohol, nor that he had gone to the segregation unit the next day to apologize to the inmate. (I guess because the major sobered up.) The major supposedly promised inmate Plancarte to give him back his loss of good conduct time and to take him out of segregation. Also there was nothing done to AWS Robert Ellis for refusing to allow Plancarte to have a witness, and of course, how the DHO coerced Plancarte into signing a form that he did not want a witness, to cover the fact that the inmate was basically denied his civil rights.

Months later, ex-case manager, Danielle Garcia was terminated from her job following an investigation that she initiated basically alleging that the Major shows up at the prison under the influence of alcohol. The GEO investigator, Ron Nardolillo, refused to allow me to introduce the information on the Plancarte's case and stated, "This was operational and had no bearing on the investigation." Not only, did he not allow me to introduce this information, I found out later that some of the vital witnesses had not been summons. There was a case manager who is currently at Reeves Co. Detention Center III, (Sonja Nichols), that was constantly calling Ms. Garcia and telling her that the major was in her office asking for breath mints to conceal the smell of alcohol on his breath. She, however, told Ms. Garcia that she would never throw the major under the bus. Senior Correctional Officer, Samuel Urias, was not called to testify that he was with me when the officer on duty at the segregation unit had commented to us, that the officers will not turn in the major for being under the influence to Warden Thompson because they are drinking buddies and the way things are run in this prison is like going against the "Mafia".

This brings me to my complaint. I filed a grievance with Human Resources in November of 2015. On February 17, 2016, I was called to Warden Bobby Thompson's office. I was told that the lawyers,( not the investigators), had concluded that the investigation was all "OPERATIONAL". Then I was told I needed to let "bygones be bygones" and to move on. I was also told I would not be getting a copy of the investigation report.



## U.S. Equal Employment Opportunity Commission
### El Paso Area Office

300 E. Main Drive, Suite 500
El Paso, TX 79901

(915) 534-6700
TTY (915) 534-6710
Fax: (915) 534-6701

Respondent: REEVES COUNTY DETENTION CENTER
EEOC Charge No.: 846-2016-13824
FEPA Charge No.:

April 7, 2016

Nora Littlejohn
808 South Allen Street
Monahans, TX 79756

Dear Ms. Littlejohn:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[ X ]   The Age Discrimination in Employment Act (ADEA)

[ ]   The Americans with Disabilities Act (ADA)

[ ]   The Equal Pay Act (EPA)

[ ]   The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1) Review the enclosed charge form and make corrections.

(2) Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filing date.

(3) Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to Texas Workforce Commission Civil Rights Division 101 East 15th St Room 144T Austin, TX 78778 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.


EXHIBIT
E

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Yvette Rodriguez

Yvette Rodriguez
Investigator
(915) 534-4527

Office Hours: Monday – Friday, 8:00 a.m. - 3:30 p.m.
www.eeoc.gov

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 846-2016-13824 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Nora Littlejohn | (432) 943-2908 | 05-24-1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| 808 South Allen Street, Monahans, TX 79756 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| REEVES COUNTY DETENTION CENTER | 201 - 500 | (432) 447-2926 |

| Street Address | City, State and ZIP Code |
|---|---|
| 100 CO RD 204,  Pecos, TX 79772 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 10-12-2015   Latest 10-12-2015

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. **PERSONAL HARM:**
   a. On November 10, 2015, I was wrongfully placed on two (2) days suspension without pay due to false allegations issued by my immediate Supervisor, Maria Lopez, Unit Manager. At the disciplinary hearing, I was not allowed to speak, provide witnesses on my behalf, and defend myself.
   b. Between October 12, 2015 and November 10, 2015, my co-worker Joey Ayala, male, case manager for Unit G, has been allowed by Ms. Lopez to conduct his daily work duties with total disregard for policy and procedure. When I confronted him about this, he said that Ms. Lopez was aware of it and said, "She's OK with it".
   c. My recent evaluation was scored below standard. I did not sign the evaluation as I believe it is based on Ms. Lopez's personal opinion and not facts.
   d. I filed a grievance with Human Resources in November 2015.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

04/12/2016  *Nora O. Littlejohn*
Date    Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

EXHIBIT
G

EEOC Form 4 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 846-2016-13824 |
| **Texas Workforce Commission Civil Rights Division** | | and EEOC |
| State or local Agency, if any | | |

**RESPONDENT'S REASON FOR ADVERSE HARM:**

  a. On February 17, 2016, I was called to Warden Bobby Thompson's office. I was told that the lawyers, not the investigators, had concluded that the investigation was "operational". I was told that I needed to "let bygones be bygones" and to "move on". I was informed that I would not be getting a copy of the investigational report.

I believe that I have been discriminated because of my age, 62 years, in violation of the Age Discrimination in Employment Act of 1967, as amended.

I believe that I have been discriminated against because of my sex, female, and that I have been retaliated against in the manner generally described above in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any, I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 04/12/2016    *Nora O. Littlejohn*<br>Date       Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



# REEVES COUNTY DETENTION CENTER

P.O. Box 1560
98 West Country Road 204
Pecos, Texas 79772

PHONE (432) 447-2926
FAX (432) 447-9224

April 28, 2016

Nora Littlejohn
808 S. Allen St.
Monahans, Texas 79756

Re: Administrative Suspension

Dear Ms. Littlejohn,

This letter will serve as official notification that you have been placed on Administrative
Suspension without pay effective April 28, 2016. This suspension will be in effect pending
conclusion of investigation.

During this suspension, you will not be allowed access to the secured area of Reeves County
Detention Center. If needed or requested, you may report to the Administration Building for
assistance. It is your responsibility to contact HR weekly regarding your status or within 24
hours of legal proceedings or change in information relevant to suspension. In accordance with
Reeves County Detention Center I & II and III Policy 03.017, accrued leave cannot be used
while on disciplinary leave.

Upon conclusion of the investigation, you will be contacted and notified of your employment
status. Please ensure the Human Resources Department has a current address and phone number
for you at all time. If you have elected to retain your insurance benefits during your suspension,
please follow the benefits payment schedule as referenced on the attached "Benefits While on
Administrative Leave" form.

Your immediate point of contact for information regarding the status of your suspension is the
Reeves County Detention Center Human Resources Department. If you have any questions,
please contact me directly at (432) 447-2926 Extension 1025.

Regards,

Laura Rodriguez,
HRM

_____            04-28-2016
Employee Signature                        Date

EXHIBIT
H

01/2016  11:09    4329433332         WARDCOUNTYLIBRARY              PAGE  04

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: __Littlejohn__      First Name: __Nora__      MI: __O__

Street or Mailing Address: __808 South Allen St.__      Apt or Unit #: _____

City: __Monahans__   County: __Ward__   State: __TX__   Zip: __79756__

Phone Numbers: Home: __432-697-8634__   Work: __432-447-2926__

Cell: __432-697-8634__   Email Address: __nora.littlejohn@yahoo.com__

Date of Birth: __05-27-1954__   Sex: ☐ Male ☒ Female   Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions.   i. Are you Hispanic or Latino? ☒ Yes ☐ No

ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White
☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? __Spain / Mexico__

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: __Kenneth D. Littlejohn (OR) Kristin Littlejohn__   Relationship: __Spouse/ daughter__

Address: __808 S. Allen Street__   City: __Monahans__   State: __TX__   Zip Code: __79756__

Home Phone: __spouse (432) 967 7101__   Other Phone: __432 631-9070 spouse's work phone__
__daughter 432 894 4839__

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) __Retaliation__

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: __Reeves County Detention Center I & II__

Address: __P.O. Box 1560__   County: __Reeves__

City: __Pecos__   State: __TX__   Zip: __79772__   Phone: __432  447  2926__

Type of Business: __Government__   Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: __Laura Rodriguez__   Phone: __432 447 2926__

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☒ 201 - 500   ☐ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No

Date Hired: __01-13-2005__   Job Title At Hire: __Correctional Officer__

Pay Rate When Hired: __$11.00 an hr (?)__   Last or Current Pay Rate: __$20.40 an hour__

Job Title at Time of Alleged Discrimination: __Case Manager__   Date Quit/Discharged: __N/A__

Name and Title of Immediate Supervisor: __Maria Lopez - Unit Manager__

If Job Applicant, Date You Applied for Job __N/A__   Job Title Applied For __N/A__

**EXHIBIT**
**1**

2016  11:09     4329433332          WARDCOUNTYLIBRARY              PAGE  05          *3*

What is the reason (basis) for your claim of employment discrimination?

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race  ☐ Sex  ☐ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☑ Retaliation  ☑ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing  ii. family medical history  iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: __N/A__

If you checked genetic information, how did the employer obtain the genetic information? __N/A__

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** <u>Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.</u>  Please attach additional pages if needed. *(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: _____ Action: _____
__See attachments__

Name and Title of Person(s) Responsible: _____

B. Date: _____ Action: _____

Name and Title of Person(s) Responsible _____

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
__N/A__

**7. What reason(s) were given to you for the acts you consider discriminatory?**  By whom? His or Her Job Title?
__N/A__

**8. Describe who was in the same or similar situation as you and how they were treated.**  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| <u>Full Name</u> | <u>Race, Sex, Age, National Origin, Religion or Disability</u> | <u>Job Title</u> | <u>Description of Treatment</u> |
|---|---|---|---|
| A. __N/A__ | | | |
| B. | | | |
| C. | | | |

2

4

of the persons in the same or similar situation as you, who was treated *worse* than you?

Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment

A. N/A

B.

Of the persons in the same or similar situation as you, who was treated the *same* as you?

Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment

A. N/A

B.

Answer questions 9-12 **only** if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

N/A

9.  Please check all that apply:
☐ Yes, I have a disability
☐ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

N/A

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☐ Yes ☐ No   N/A
If "Yes," what medication, medical equipment or other assistance do you use?

N/A

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?
☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

s How did your employer respond to your request? _____

3

2016  11:09     4329433332          WARDCOUNTYLIBRARY          PAGE  07

5

13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say.  (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|-----------|-----------|------------------------|-----------------------------------------------|

A.  N/A

B.  _____

14.  Have you filed a charge previously on this matter with the EEOC or another agency?  ☑ Yes  ☐ No

Same

15.  If you filed a complaint with another agency, provide the name of agency and the date of filing:  _____

Charge # 846 - 2016 - 13824  dated  4/7/2016

16.  Have you sought help about this situation from a union, an attorney, or any other source?  ☑ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

Gerald Fugit  Attorney At Law
412 N. Texas Avenue, Odessa, TX 79761-5198

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

BOX 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

Retaliation

BOX 2  ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_Neval. Littlejohn_
Signature

05-31-2016
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE, EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| ~~Nora Littlejohn~~ | From: | El Paso Area Office |
| ~~808 South Allen Street~~ | | 300 E. Main Drive, Suite 500 |
| ~~Monahans, TX 79756~~ | | El Paso, TX 79901 |

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2016-13824 | Yvette Rodriguez, Investigator | (915) 534-4527 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge. |
| X | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Lucy V. Orta,
Area Office Director

(Date Mailed)

Enclosures(s)

cc:
Pat DeBlasio
Sharholder
Littler Mendelson
c/o Littler Mendelson - GSC
2301 McGee Street, 8th Floor
Kansas City, MO 64108

Gerald Fugit
412 North Texas Avenue
Odessa, TX 79761

EXHIBIT

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:   **Michelle Anderson**
      **Littler Mendelson, P.C.**
      **2301 McGee St.**
      **8th Floor**
      **Kansas City, MO 64108**

07/05/2016  10:21   4329433332                     WARD COUNTY LIBRARY                     PAGE  04

*handwritten: Totally a File W the EEOC Complaint of this case*

| EEOC Form 5 (11/09) | | |
|---|---|---|
| **CHARGE OF DISCRIMINATION** This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | **Charge Presented To:** ☐ FEPA ☒ EEOC | **Agency(ies) Charge No(s):** 453-2016-00904 |
| | **Texas Workforce Commission Civil Rights Division** | and EEOC |

_State or local Agency, if any_

| Name (Indicate Mr., Ms., Mrs.) **Ms. Nora Littlejohn** | Home Phone (Incl. Area Code) **(432) 697-8634** | Date of Birth **05-24-1957** |
|---|---|---|
| Street Address **808 South Allen Street, Monahans, TX 79756** | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name **REEVES COUNTY DETENTION CENTER** | No. Employees, Members **201 - 500** | Phone No. (Include Area Code) **(432) 447-2926** |
|---|---|---|
| Street Address **P.O. Box 1560,  Pecos, TX 79772** | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | ☐ DISABILITY | ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **04-28-2016**   Latest **04-28-2016**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.   **PERSONAL HARM:**
     On or about April 28, 2016, I was suspended indefinitely.

II.  **RESPONDENT'S REASON FOR ADVERSE HARM:**
     No reason given.

I believed that I am being retaliated against for having filed an EEOC Charge  (#846-2016-13824) in violation of Title VII of the Civil Rights Act of 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **7/5/2016**   _Nora O. Littlejohn_  Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**EXHIBIT**
K

21/2016  13:41    4329433332         WARDCOUNTYLIBRARY                    PAGE  04



# REEVES COUNTY DETENTION CENTER

P.O. Box 1560
98 West Country Road 204
Pecos, Texas 79772

PHONE (432) 447-2926
FAX (432) 447-9224

July 15, 2016

Nora Littlejohn
808 South Allen
Monahans, TX 79756

Dear Ms. Littlejohn,

You have been terminated from your employment at the Reeves County Detention Center effective July 15, 2016, as a result of your disciplinary hearing held on July 14, 2016, for Failure to Cooperate with an Official Investigation and Falsifying Inmates Official Prison Record.

You are required to complete an exit interview in the HR Department and return all RCDC belongings to the Training Department. You will have the option to continue your health insurance coverage (COBRA) with Blue Cross Blue Shield who will be mailing you the Cobra Application.

If you have any questions, please contact the HR Manager, Laura Rodriguez ext. #1025.

A copy of this letter will be filed in your permanent Personnel File.

Respectfully,

Bobby Thompson, Warden

BT/lr

cc: Personal File
Certified Mail Receipt # 7010 1060 0002 1782 5671



07/26/2016  12:59   4329433332          WARD COUNTY LIBRARY          PAGE  04

U 7.27.16 File/
MISC

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | AMENDED |
| | ☒ EEOC | 453-2016-00904 |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Nora Littlejohn | (432) 697-8634 | 05-24-1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| 808 South Allen Street, Monahans, TX 79756 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| REEVES COUNTY DETENTION CENTER | 201 - 500 | (432) 447-2926 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 1560,  Pecos, TX 79772 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|
| Earliest | Latest |
| 04-28-2016 | 04-28-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**I.   PERSONAL HARM:**
On July 14, 2016, I was terminated by Deputy Warden Martinez.

**II.  RESPONDENT'S REASON FOR ADVERSE HARM:**
I was informed by Deputy Warden Martinez that the reason for my termination was that I "failed to cooperate".

I believed that I have been retaliated against for having filed an EEOC Charge (#846-2016-13824) in violation of Title VII of the Civil Rights Act of 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 7-26-2016     *Nora O. Littlejohn*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



EXHIBIT
M